IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| RYAN A. WILLIAMSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No: |
| | ) |
| CITY OF PEKIN FIRE DEPARTMENT, | ) |
| | ) |
| Defendants. | ) |

### COMPLAINT

Plaintiff, RYAN A. WILLIAMSON, by and his attorneys, JULIE L. GALASSI, DUSTIN R. JENSEN, and HASSELBERG, ROCK, BELL & KUPPLER, LLP, states the following for his COMPLAINT against Defendant, CITY OF PEKIN FIRE DEPARTMENT:

#### INTRODUCTION

1. Defendant, the City of Pekin Fire Department (the "PFD") employed Plaintiff, Ryan Williamson ("Williamson"). At some point during his employment with the PFD, Ryan Williamson began to experience chronic testicular pain.

2. On August 7, 2012, the PFD forced Williamson to take a medical leave of absence from his employment because of his chronic testicular pain. The PFD initially told Williamson that his medical leave would expire on March 28, 2013. On January 8, 2013 the PFD told Williamson that his leave time would expire on February 2, 2013. Williamson underwent successfully surgery to rectify his chronic testicular pain and received a release from his doctor to return to work without restrictions on February 2, 2013.

3. The PFD refused to allow Williamson to return to work on February 2, 2013. On April 10, 2013, Williamson's employment with the PFD was terminated. The PFD never

engaged in an interactive process with Williamson to determine whether the PFD could reasonably accommodate his disability before terminating his employment.

4.  The PFD's termination of Williamson violated the Americans with Disabilities Act, 42 U.S.C. 12111, *et seq*, by terminating Williamson because of his disability, failing to reasonably accommodate his disability, and failing to engage in an interactive process to determine reasonable accommodations for Williamson's disability.

### FACTUAL ALLEGATIONS

### PARTIES

5.  Plaintiff, Williamson, resides in Tazewell County, Illinois. At all relevant times, Williamson constituted a "qualified individual" pursuant to 42 U.S.C. 12111(8) and an "employee" of PFD pursuant to 42 U.S.C. 12111(4).

6.  Defendant, the PFD, has its headquarters in Tazewell County, Illinois. At all relevant times, the PFD constituted an "employer" pursuant to 42 U.S.C. 12111(5) and a "covered entity" pursuant to 42 U.S.C. 12111(2).

### JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 42 U.S.C. 12111, *et seq*. Williamson received a Notice of Right to Sue from the Equal Employment Opportunity Commission on June 19, 2013, a copy of which Plaintiff attaches hereto and incorporates herein by reference as Exhibit 1.

8.  The Central District of Illinois, Peoria Division, is the proper venue for this matter pursuant to 28 U.S.C. 1391(b)(1) and (2), because Defendant resides in the Central District of Illinois, Peoria Division, pursuant to the residency standards set forth in 28 U.S.C. 1391(c)(1)

and (2), and a substantial part of the events giving rise to Williamson's claims occurred in the Central District of Illinois, Peoria Division.

### PLAINTIFF'S EMPLOYMENT AND ONSET OF DISABILITY

9.      Williamson began working for the PFD on June 12, 2006. The PFD's job performance appraisals of Williamson shows that at all times while employed by the PFD Williamson met all of the PFD's job standards and usually exceeded all of PFD's job standards.

10.     At some point during Williamson's employment with the PFD, Williamson began to experience chronic testicular pain. Sometimes the pain became so severe it would force Williamson to the ground. On August 7, 2012, the PFD forced Williamson to take medical leave due to his chronic testicular pain. Williamson attaches hereto and incorporates herein by reference as Exhibit 2 a copy of the PFD's August 7, 2012 letter.

### DEFENDANTS' MISTREATMENT OF PLAINTIFF

11.     The PFD has a collective bargaining agreement with its employees (the "CBA"). Pursuant to the CBA, an employee on leave for an injury sustained off-duty "shall be entitled to be off for a period of ninety (90) accumulative scheduled shift days in any two-year period." See Exhibit 3, p. 32. Williamson attaches hereto and incorporates herein by reference as Exhibit 3 a copy of the relevant pages of the CBA.

12.     Upon forcing Williamson to take medical leave, the PFD informed Williamson that his allowed medical leave time would expire on March 28, 2013. Based on this deadline, Williamson scheduled surgery to rectify his chronic testicular pain with a doctor in Madison, Wisconsin that would allow him to return to work on March 1, 2013. Williamson informed the PFD's Assistant Chief, Rick Bowman ("Bowman"), of the doctor's prognosis.

13.     About one week after learning of Williamson's scheduled surgery and projected return date, Bowman informed Williamson that his leave time would expire by February 26, 2013. Williamson's return dated changed from March 28, 2013 to February 26, 2013, because the PFD's Chief, Kurt Nelson ("Nelson"), "recounted the days" that Williamson missed due to his disability.

14.     On January 8, 2013, the PFD informed Williamson that his leave time would expire on February 2, 2013, 24 days earlier than its second represented return date and 55 days shorter than the return date initially represented to Williamson. Williamson attaches hereto and incorporates herein by reference as Exhibit 4 a copy of the PFD's January 8, 2013 letter.

15.     The PFD's calculation of Williamson's remaining leave time included days that Williamson did not work because of mandatory days off duty referred to as Kelly Days. The PFD mandates that "the annual average hours of work shall not exceed 52.5 hours per week. The average weekly hours shall be accomplished by scheduling every 16th duty shift as a 'KELLY DAY' off duty." See Exhibit 3, p. 26. The PFD prohibited employees, like Williamson, from working on Kelly Days. Counting the Kelly Days as days taken off by Williamson's resulted in his mandatory return date as expressed in Exhibit 4 being fourteen shift days earlier than it should have been.

16.     Williamson rescheduled, and had, surgery to rectify his chronic testicular pain on January 21, 2013. Following successful surgery, Williamson's doctor released him to return to work on February 2, 2013. Williamson attaches hereto and incorporates herein by reference as Exhibit 5 two separate doctor's notes releasing Williamson for work with the PFD.

17.     Williamson's release to work on February 2, 2013 allowed him to return to work on his mandatory return date as represented in Exhibit 4. Williamson's release to work on

February 2, 2013 allowed him to return to work well before the mandatory return date calculated without including his mandatory Kelly Days as leave time. Williamson's release to work on February 2, 2013 allowed him to return to work well before the mandatory return dates that the PFD initially told him that he had to return by.

18. On January 31, 2013, a PFD physician examined Williamson. The PFD physician noted that the doctor that performed Williamson's surgery released him to return to work on February 2, 2013 and that Williamson had not used pain medication for five days. Despite these notations, the PFD physician refused to clear Williamson to return to work with the PFD. Williamson attaches hereto and incorporates herein by reference as Exhibit 6 notes from the PFD physician's examination of Williamson.

19. Williamson was terminated from his employment with the PFD on April 10, 2013. Williamson attaches hereto and incorporates herein by reference as Exhibit 7 a copy of the letter terminating Williamson.

20. The PFD did not engage in an interactive process to determine whether an appropriate accommodation existed at any point during Williamson's struggle with, and recovery from, chronic testicular pain. The PFD never considered reassignment to other positions or job restructuring while Williamson struggled with his disability.

### COUNT I
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. 12111, *ET SEQ.*

21. Williamson realleges and incorporates paragraphs 1-20 into Count I.

22. The Americans with Disabilities Act, 42 U.S.C. 12111, *et seq*, provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to… the… discharge of employees,… and other terms, conditions, and privileges of employment." 42 U.S.C. 12112(a)

23. At all relevant times, Williamson was a qualified individual with a disability, because he: 1) suffered from a physical impairment that substantially limited a major life activity; 2) had a record of a physical impairment that substantially limited a major life activity; and 3) was regarded by the PFD as having a physical impairment that substantially limited a major life activity (1-3 collectively referred to as "Williamson's Disability").

24. At all relevant times, Williamson could perform the essential functions of the employment condition that he held, with or without reasonable accommodation.

25. Defendant never engaged in an interactive process with Williamson to determine an appropriate accommodation under the circumstances described in this complaint.

26. Defendant's employment actions against Williamson described in this Complaint were motivated because of animus toward Williamson's Disability and with the intent to cause an adverse employment action against Williamson.

27. But for the actions described in this Complaint, Williamson would not have been terminated from his employment.

28. Defendant replaced Williamson with an individual not in the protected class.

29. The PFD's numerous representations regarding Williamson's allowed medical leave time as well as its failure to engage in an interactive process with Williamson serves as direct evidence of the PFD's intent to discriminate against Williamson because of Williamson's Disability.

30. As a direct and proximate cause of the aforementioned acts of Defendant and its agents Williamson suffered financial losses, severe mental anguish, and humiliation as a result of the violations of his rights guaranteed by 42 U.S.C. 12111, *et seq.*

WHEREFORE Plaintiff, RYAN A. WILLIAMSON, respectfully requests that this Court enter judgment in his favor and against Defendant, CITY OF PEKIN FIRE DEPARTMENT, and grant the following relief:

A. an injunction requiring Defendant to reemploy Plaintiff in the position from which he was terminated or a comparable position, or in lieu thereof award him monies equal to lost future wages and benefits;

B. an injunction prohibiting Defendant from any further prohibited discrimination against Plaintiff;

C. back pay that Plaintiff would have earned, together with related monetary benefits and interest thereon;

D. compensatory damages in an amount determined at trial of this matter;

E. liquidated and exemplary damages provided for by law for Defendant's willful violations of law;

F. an award of Plaintiff's attorney fees, including legal expenses, and costs; and

G. such further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

RYAN A. WILLIAMSON,
Plaintiff

By: */s/ Dustin R. Jensen*
JULIE L. GALASSI
DUSTIN R. JENSEN
HASSELBERG, ROCK, BELL & KUPPLER, LLP
Suite 200 Associated Bank Building
4600 North Brandywine Drive
Peoria, Illinois 61614-5591
Telephone:   (309) 688-9400
Facsimile:   (309) 688-9430
Email:       jgalassi@hrbklaw.com
             djensen@hrbklaw.com

t:\j&j asst\wpdocs\jlg\williamson, ryan\pleadings\complaint.docx